**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

LORENZO DOWNING,

    Plaintiff,

    v.

IOU CENTRAL, INC d/b/a IOU
FINANCIAL, LLC, a Georgia limited
liability company,

    Defendant.

CIVIL ACTION FILE NO.

1:19-CV-0929-MLB

**REPLY BRIEF OF DEFENDANT IOU CENTRAL, INC.
IN SUPPORT OF ITS RENEWED MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

# Table of Contents

INTRODUCTION ................................................................................................1

LEGAL ARGUMENT .......................................................................................2

I. Downing Knew of His Potential Forgery Defenses Prior to Settling the
Maryland Litigation ........................................................................................2

   A. Downing *Admits* He Had Prior Knowledge Of The "Fraud" During the
      Maryland Litigation But "Elected" Not To Do Anything About It ..............2

   B. Downing's Prior Knowledge is Shown By His Pleadings ...........................3

   C. Downing Voluntarily Settled the Maryland Litigation With Prior
      Knowledge And Consented to Judgment And Released All Claims
      Including The Fraud Claim ..........................................................................5

      1. The Maryland Consent Judgment and Settlement ...................................5

      2. Plaintiff Refers To But Omits From His FAC These Critical Maryland
         Records ...................................................................................................7

      3. This Court May Consider the Maryland Court Pleadings Without
         Converting Defendant's Motion to Summary Judgment ........................9

      4. The Consent Judgment Is a Valid, Final Determination on the Merits .11

         (i) *The Consent Judgment Is a Determination on the Merits* ...............11

         (ii) *The Consent Judgment Waived Any Jurisdictional Challenges* ......12

II. Plaintiff's Claims Are Barred by the Rooker-Feldman Doctrine .................13

III. Downing's Fraud Claim Is Precluded by Res Judicata .................................15

IV. Plaintiff's Fraud Claim Fails ........................................................................18

   A. Plaintiff Has Not Plead Fraud with Particularity or Plausibility ..............18

   1. Plaintiff Has Not Plead Fraud with Particularity ...................................19

     2.      <u>The Element of Reliance Does Not Exist</u>................................................22

     3.      <u>The Merger Clause In the Settlement Agreement Precludes Reliance</u> ..23

  V.   Plaintiff's FDCPA, GFBPA, and GUDTPA Claims
       (Counts 1-3, 5-6) Fail .....................................................................................24

CONCLUSION .......................................................................................................25

## Exhibit List

Pleadings from: **IOU Central, Inc. v. Lorenzo Downing**, *et.al.*, in the Circuit Court of Prince George's County, State of Maryland, Case No. CAL 17-06422, March 16, 2017

| No. | Document | Date Filed |
|-----|----------|------------|
| *1* | ***Maryland Litigation Docket Report*** | |
| *2* | ***IOU's Complaint*** | *3-16-2017* |
| *3* | ***Motion for Summary Judgment*** | *5-30-2017* |
| | Memorandum of Law | |
| | Affidavit of Phil Bishop | |
| | Exh. 1 Promissory Note | |
| | Exh. 2 Guaranty | |
| | Exh. 3 Authorizations for Electronic Debits | |
| | Exh. 4 Account Ledger | |
| | Exh. 5 Demand Letter | |
| | Exh. 6 Affidavit for Attorneys' Fees | |
| *4* | ***Voluntary Dismissal*** | *6-30-2017* |
| *5* | ***Motion to Reopen Case*** | *1-22-2018* |
| | Exh. 1 Settlement Agr. and Mutual Release | |
| | Exh. 2 Consent to Judgment | |
| *6* | ***Order and Judgment*** | *3-19-2018* |
| *7* | ***Downing's Amended Motion to Vacate*** | *6-7-2018* |
| | Exh. 1 Guaranty | |
| | Exh. 2 E-mail string: Downing and his atty | |

## INTRODUCTION

This is neither complex litigation nor a case of first impression. This case is entirely about the Plaintiff's refusal to accept the Maryland judgment rendered against him. It is a judgment that Plaintiff voluntarily consented to in writing, with the advice of legal counsel, that resolved the very issue of the guaranty's authenticity and the jurisdiction of the Maryland court that Plaintiff now raises in this Court. It was a judgment that Plaintiff later sought to vacate in Maryland, which was denied. We know these facts because they are public record, signed and notarized by Plaintiff himself or served upon him, filed with the Maryland Court concluding the Maryland litigation in full, on the merits, and with finality and of which this Court can consider and take judicial notice.

Disregarding the finality of the Maryland litigation, as shown by the FAC and his Responsive Memorandum, Downing's case now, before this Court, is entirely predicated on the single fundamental allegation that was resolved in the Maryland litigation --- that the Guaranty was a forgery. From this single predicate allegation all six (6) of Plaintiff's Counts in the FAC follow.

Despite the previous judicial determinations by the Maryland Court, Plaintiff demands this Court accept his implausible, selective facts and specious conclusions that are demonstratively shown to be untrue by the public record before this Court.

Indeed, Plaintiff cannot reconcile his claims with reality. He does not even try. Instead, in an attempt to give this Court the impression of claims based in fact, Plaintiff makes veiled references to the previous litigation in the FAC and simply ignores and omits the integral details revealed in the Maryland pleadings which are fatal to his claims.

## LEGAL ARGUMENT

**I.** **Downing Knew of His Potential Forgery Defenses Prior to Settling the Maryland Litigation**

**A.** **Downing *Admits* He Had Prior Knowledge Of The "Fraud" During the Maryland Litigation But "Elected" Not To Do Anything About It**

In Downing's Responsive Memorandum, he admits he knew of the alleged forged Guaranty during the Maryland litigation but "elected" not to assert it in the Maryland case.[1] As he describes it, the defense of forgery in the Maryland case was "not a compulsive counterclaim" and that he "in fact elect[ed]" not to raise the issue. (Brief pg. 29). He characterizes his Maryland experience as either a "mistake, error, fraud and/or ineffective assistance of counsel".[2] Yet, despite knowledge of this potential defense, Downing, with the assistance of legal counsel, settled the case by Consent Judgment resolving with finality the issue of the Guaranty's genuineness.

---

[1] Downing's Responsive Memorandum, pg. 29.
[2] FAC para 18; See also, Attachment No. 7, pg. 3 para. 11)

**B.     Downing's Prior Knowledge is Shown By His Pleadings**

Downing's prior knowledge (during the Maryland litigation) is also on display in his allegations in the FAC and the pleadings filed in the Maryland public records. Downing steadfastly asserts in the FAC that "he never signed a guaranty". [3] Possessed with this clear knowledge, Downing would have known that any guaranty IOU presented to him for collection was therefore not authentic and would have known of the forgery defense from the start.

In fact, the Guaranty was presented to Downing at several stages during the Maryland collection case.  For instance, it was referenced in the Complaint where IOU alleged he signed it, and it was also attached as a sworn exhibit to IOU's affidavit in support of its motion for summary judgment in Maryland where its authenticity was stated. Downing did not controvert IOU's sworn affidavit and did not contest IOU's motion for summary judgment. Instead, Downing "elected" not to assert the defense prior to a ruling on IOU's motion and instead settled the case.

Downing's prior knowledge is also shown in the Maryland pleadings he authored and filed with the Maryland court.[4]  Several months after the settlement and dismissal of the Maryland case Downing sought to vacate the judgment against

---

[3] FAC para.'s 33, 49, 55, 72, 83, and 94.
[4] Attachment No. 7, pg. 3, para's 6-8).

him where he argued to the Maryland court that he never signed the Guaranty and the Guaranty was a forgery.[5]  In his briefing before the Maryland court, Downing cited in support of his motion his own email from months earlier, copied to his attorney, reasserting that he never signed any guaranty.[6]  Not only does this revelation show prior knowledge that Downing believed the Guaranty was not genuine, but this prior knowledge of legal defenses that he "elected" not to use in Maryland is fatal to his claim for fraud since it destroys any semblance of justifiable reliance.  When Downing did finally raise the issue of forgery in Maryland on his Amended Motion to Vacate, the Court denied his motion.[7]

These admissions and legal choices taken by Downing in the Maryland case are contrary to his current allegation of fraud he now alleges. His legal defenses were known to him and to his attorney and could have been raised in Maryland prior to judgment.  Yet, despite his prior knowledge and beliefs, both Downing and his attorney, chose to settle the Maryland case by Consent Judgment before the Maryland Court ruled on IOU's motion for summary judgment.

---

[5] Id.
[6] See Attachment 7, pg. 3, (Exh.2).
[7] Maryland Docket entry dated 9-21-2018.

### C. Downing Voluntarily Settled the Maryland Litigation With Prior Knowledge And Consented to Judgment And Released All Claims Including The Fraud Claim

1. <u>The Maryland Consent Judgment and Settlement</u>

The issue of the Guaranty's authenticity was judicially resolved, on the merits, in Maryland. As is typical of any commercial collection case, the issue of whether the debtor signed the commercial instrument is fundamental. That issue was squarely before the Maryland court in the case of <u>IOU Central, Inc. v. Lorenzo Downing</u>, *et.al*., in the Circuit Court of Prince George's County, State of Maryland, Case No. CAL 17-06422, on March 16, 2017. We know this because the pleadings on public record expressly show that IOU, in that case, alleged that Downing signed the Guaranty. The Guaranty was referenced in the Complaint and was presented with IOU's motion for summary judgment where the Guaranty was submitted as Exhibit 2 to the uncontradicted, sworn affidavit of IOU asserting its authenticity.[8]

As discussed above, Downing's Responsive Memorandum and the public records clearly show that Downing, and his attorney in the Maryland case, were aware of their belief of the forgery defense. [9] Nevertheless, possessed with prior

---

[8] See Attachment No.s 1 and 2.

[9] See the discussion*,* of this issue in more detail in Section I. B. of this Reply, *supra*; See also, Downing's Responsive Memorandum pg. 29; Attachment No. 7, pg., 3 (Exh. 2).

knowledge of a forgery defense, and before a ruling was had on IOU's motion for summary judgment in Maryland, Downing, while represented by legal counsel, voluntarily settled the Maryland case by Consent Judgment. [10]

The Maryland public records reveal that Downing signed and notarized a written Settlement Agreement and Mutual Release Agreement releasing all claims, known or unknown, established a payment plan,[11] signed a Consent Judgment [12] and, signed and filed a joint Voluntarily Dismissal of the case[13].

By operation of law, the Consent Judgment, the Voluntary Dismissal, and the Settlement and Release extinguished any defenses relating to the authenticity of the Guaranty or the jurisdiction of the Maryland court.

Several months later, Downing defaulted on the payment plan, the case was a reopened, the Consent Judgment was entered, and judgment was taken against Downing.[14] When collection activity resumed, Downing filed his motion to vacate the Maryland judgment. [15]

---

[10] See Attachment No. 5 (Exh. 2).
[11] Id. (Exh. 1).
[12] Id.
[13] See Attachment No. 4.
[14] See Attachment No. 6.
[15] See Attachment No. 7.

Downing now complains again that the Guaranty is a forgery despite having first elected to waive the defense then making and losing that argument in Maryland.

2. <u>Plaintiff Refers To But Omits From His FAC These Critical Maryland Records</u>

Downing makes repeated references to, and bases his FAC claims on, the pleadings from the Maryland litigation. Indeed, the Maryland litigation is central to his claims of fraud and forgery. Yet, he purposefully omits, or simply fails to plead, the most critical portions of the Maryland pleadings that are fatal to his FAC claims.

The public records of the Circuit Court for Prince George's County, Maryland, Civil Act. No. Cal 17-06422 integral to Downing's claims reveal that:

(1) The Maryland Complaint expressly alleged the Guaranty was signed by Downing. [16]

(2) The Guaranty was presented to Downing on IOU's Motion for Summary Judgment where its authenticity was verified by the uncontested sworn affidavit of IOU attached to the Motion.[17]

(4) With full knowledge of the claims against him, and with the advice of legal counsel, Downing settled the Maryland lawsuit and thereafter commenced

---

[16] See Attachment No. 2, para. 6.
[17] See Attachment No. 3, Affidavit of IOU (Exh. 2).

making payments to IOU in accordance with the Settlement Agreement.[18]

(5)  Pursuant to the Settlement Agreement and Mutual Release, Downing agreed to make payments on the loan in exchange of dismissal of the lawsuit.[19]  IOU reserved the right to reopen the case and file the Consent Judgment in the event of default.[20] Downing also provided a full release of all claims, known or unknown, against IOU.[21]  Downing was represented by legal counsel, acknowledged he and his legal counsel reviewed the document before signing, and the case was voluntarily dismissed. [22] The Settlement Agreement is governed by Maryland law, challenges to it must be brought in Maryland, and it contains a merger clause.[23]

(6)  When Downing defaulted on the Settlement Agreement, the case was re-opened and the Consent Judgment was entered against Downing. [24]

(7)  Once collection activity resumed, Downing Moved to Vacate the Consent Judgment; which was denied.[25]

---

[18] See Attachments No 4 and 5 (Exh. 1 and 2); See also Downing's Responsive Memorandum, pg. 29.
[19] See attachment No. 5 (Exh. 1 para 1).
[20] Id.
[21] Id. (Exh. 1 para. 3).
[22] Id. (Exh. 1 para 5); See Also, Attachment No. 4.
[23] Id. (Exh. 1 para.s  4 and 6).
[24] Id.; See also Attachment No. 4.
[25] See Attachment No. 5 and Maryland Docket entry dated 9-21-2018.

These records, integral to Plaintiff's claims demonstrate the facts alleged by Downing in the FAC are not plausible and his claims should be dismissed.

3. <u>This Court May Consider the Maryland Court Pleadings Without Converting Defendant's Motion to Summary Judgment</u>

In deciding a Rule 12(b)(6) motion, a court may properly consider: "(1) matters attached to the complaint; (2) matters incorporated into the pleadings by reference; (3) matters of public record; and (4) matters integral to or upon which plaintiff's claim is based". *Guinn v. Seterus, Inc*., Case No. 3:18-CV-135-CAR (M.D. Ga., 2019) (relied upon publicly filed real estate records) ; *Tribble v. Tew*, Case No. 17-11674 (11th Cir., 2019) (unpublished opinion); *Hadley v. Bank of Am*., Case No. 1:17-CV-1522-TWT-LTW (N.D. Ga., 2018) (relying on specific provisions of recorded real estate documents); *Davis v. Self*, 547 F. App'x 927, 929 (11th Cir. 2013); Fed. R. Evid. 201(a)-(d).

Federal Rule of Evidence 201(b)(2) permits the Court to take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned". Moreover, judicial notice is mandatory when a party requests such notice and supplies the court with the necessary information. Fed. R. Evid. 20l(d). Pleadings and other court filings are classic examples of public records that may be judicially noticed. *See United States*

*v. Townse*nd, 886 F.3d 441 (4th Cir., 2018) (citing *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (citing Fed. R. Evid. 201 ) (also noting that court records are the most common type of judicially noticed records).

Independent of the Court's power to take judicial notice of public documents, the Court may consider the Maryland pleadings because: (1) Plaintiff explicitly references the materials in the Complaint; (2) Plaintiff bases his allegations on categories of public documents into which these exhibits fall; and (3) the documents are integral to Plaintiff's theory of fraud.  This may be done without converting the motion into one for summary judgment because they are central to Plaintiff's claim. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005), citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir. 1999). See also, *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."). Moreover, there is no dispute as to the authenticity of the pleadings as they are public records of which Downing is a party, authored by him or which were served upon

him in the Maryland proceedings, and filed with the Maryland Court. See *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) (taking judicial notice of state court records to decide whether collateral estoppel applies).

Downing's Complaint expressly references the Maryland litigation (Para 17-31, 35), and weaves the Maryland case into each Count of his Complaint (37-43, 46-51, 54-60, 62-76, 80-87). Plaintiff's allegations are "'based upon" and these materials are "integral to" his claims and, even if not explicitly cited, can be considered by the Court in resolving the Motion to Dismiss.

### 4. The Consent Judgment Is a Valid, Final Determination on the Merits

#### (i) *The Consent Judgment Is a Determination on the Merits*

Under Maryland law, "consent judgments should normally be given the same force and effect as any other judgment, including judgments rendered after litigation." *Jones*, 356 Md. at 532, 740 A.2d at 1014; *Chernick*, 327 Md. at 478, 610 A.2d at 774. It is a "judgment and an order of court. Its only distinction is that it is a judgment that a court enters at the request of the parties." *Jones*, 356 Md. at 528, 740 A.2d at 1013. Thus, a consent order entered properly carries the same weight and is treated as any other final judgment. *Kent Island, LLC v. DiNapoli*, 430 Md. 348, 360, 61 A.3d 21, 28 (2013). "The fact that a judgment is rendered by consent gives it neither less nor greater force or effect than it would have had it been rendered after

protracted litigation, ***except to the extent that the consent excuses error and operates to end all controversy between the parties***." (Emphasis added). *Jones v. Hubbard*, 356 Md. 513, 740 A.2d 1004, 1015 (Md., 1999) (citing *First Bank, W. Mont. v. Dist. Ct.*, 737 P.2d 1132, 1135 (1987) ("The effect of a stipulation is the same as a judgment on the merits.").

### (ii)   The Consent Judgment Waived Any Jurisdictional Challenges

Downing attempts to make a claim that the Maryland Judgment is void *ab initio* on the grounds that the Maryland court did not have subject matter jurisdiction due to an arbitration clause in the Guaranty.[26]  However, it is well settled that a party may waive the contractual right to arbitration. Under Maryland law, the waiver of the contractual right to arbitrate "may result from an express agreement or be inferred from circumstances." *Cain v. Midland Funding*, LLC, 452 Md. 141, 156 A.3d 807 (Md. App., 2017) (Citing *Bargale Industries, Inc. v. Robert Realty Co.*, 275 Md. at 643, 343 A.2d 529). To waive the right to arbitrate, a party must take action "inconsistent with an intention to insist upon enforcing" the arbitration clause. Id.  Plaintiff's decision to settle the Maryland litigation by consent judgment instead

---

[26] See FAC, para.s 18 and 28; See also, Downing's Responsive Memorandum, pg.s 3, 7, 8, 26, 30.

of asserting an arbitration demand is action "inconsistent with an intention to insist upon enforcing" the arbitration clause". Id.

## II.   **Plaintiff's Claims Are Barred by the *Rooker-Feldman Doctrine***

In an effort to sidestep the purpose and prohibitions of the *Doctrine*, Downing invites this Court to delve back into the state court proceeding by arguing that he does not really seek to overturn the Maryland decision.  Instead he simply asserts--- without anything more than the naked assertion---that the fundamental tenant of the Maryland litigation is simply *"not true"* --- that the guaranty upon which the state court proceeding was based is a forgery and *"due to mistake, error, fraud and/or ineffective assistance of counsel"* [27] the Maryland court's entering the Consent Judgment was invalid.   Further, he continues his effort to dodge the *Doctrine*, by arguing in his Responsive Memorandum that the Complaint asserts "new" claims --- claims that were not raised or decided in the Maryland Court.  Indeed, he alleges violations of federal and state statutes, e.g. FDCPA, GFBPA, and GUDTPA, that were not ligated in Maryland.  Yet, each of these Counts, as well as Downing's Count for common law fraud, are all premised upon the single predicate allegation that was litigated in Maryland --- that the Guaranty was a forgery.  Since that issue was conclusively resolved in Maryland, these claims have no basis.

---

[27] See FAC para 18, See Attachment No. 7, para 11.

To follow Plaintiff's logic and to sustain the viability of Downing's "new" claims, necessarily requires this Court, and the parties, to do what the *Rooker-Feldman* prohibits, relitigating the Maryland judgment and the issue of the Guaranty's authenticity. To countenance such a position would open literally every state court decision for re-review by a claimant simply alleging fraud in the underlying case. If so, no case would ever be final.

It bears repeating and it should matter, before this Court considers undertaking such an effort, that this Court observe that Downing made a conscious decision to sign the Settlement Agreement and Release, the Consent Judgment and to file the Voluntary Dismissal in Maryland and commenced making payments according to the Settlement Agreement before he defaulted again. He then pursued a Rule 60 attack on the Consent Judgment after collection resumed against him and filed an appeal that was dismissed.

He was also obligated, pursuant to the terms of the Settlement Agreement, to bring any challenge to it in Circuit Court of Prince George's County, Maryland.[28] Downing makes no mention of these inconvenient facts in his FAC or his Responsive Memorandum.

---

[28] See Attachment No. 5 (Exh. 1, para. 4).

No matter how he parses it, Plaintiff indeed seeks to challenge the merits of the Maryland court's final judgment. Because all of Plaintiff's claims constitute a *de facto* appeal challenging the validity of the State-court judgment the claims are barred by the *Rooker-Feldman doctrine* and it is not within this court's purview to review the propriety of the Maryland Judgment.

III.   **Downing's Fraud Claim Is Precluded by *Res Judicata***

In seeking to avoid the preclusive effects of *res judicata*, Downing asserts several arguments, none of which are valid under the facts of this case. Downing's first argument is that the Consent Judgment was not a judgment on the merits.[29] In support of this conclusion, Plaintiff misstates the holding in the case *Colandrea v. Wilde Lake Community Ass'n.*, 761 A2d 899, 909 (Md. (2000) suggesting that the Consent Judgment is not a decision on the merits.[30] Downing's support for this proposition is wrong for two (2) reasons. First, the *Colandrea* Court did not involve a consent judgment as in the case at bar. The proper treatment of a consent judgment under Maryland law is addressed in Jones v. Hubbard, 356 Md. 513, 740 A.2d 1004 (Md., 1999) (citing First Bank (N.A.) W. Mont. v. District Ct., 226 Mont. 515, 520, 737 P.2d 1132, 1135 (1987) ("The effect of a stipulation is the same as a judgment

---

[29] Downing's Responsive Memorandum, pg. 26.
[30] Downing's Responsive Memorandum, pg. 26.

on the merits.").[31]    Second, the Court in *Colandrea* was concerned with the distinction between *collateral estopple* and *res judicata*.  Holding that a subsequent lawsuit was indeed precluded on the principles of *res judicata,* the Court recited the elements of *res judicate* in Maryland stating:

> Under Maryland Law, the requirements of res judicata or claim preclusion are: 1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; 2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and 3) that there was a final judgment on the merits. (Citations omitted).
>
> *Therefore, a judgment between the same parties and their privies **is a final bar to any other suit upon the same cause of action and is conclusive, not only as to all matters decided in the original suit, but also as to matters that could have been litigated in the original suit***. Id. at 910. (Emphasis added) (Citations omitted).

Downing attempts to side-step this result and the effect of *res judicata* by suggesting that by raising "*new claims*" not litigated in the Maryland case such "*new claims*" are only nominally similar to the claims in Maryland and are therefore open for re-litigation before this Court.  But his analysis is wrong.   The "*new claims*" Downing raises are of two (2) distinct categories which are treated differently.    The first category of "*new claims*" Downing raises are claims that were indeed litigated in Maryland.   Those claims are precluded by *res judicata*.   Specifically, Downing

---

[31] See also the discussion on the issue of Maryland law and the preclusive effects pertaining to a Consent Judgment in Section I. B 4, *supra*.

asserts the "new claim" that the Guaranty was a forgery. That issue was expressly litigated and resolved, on the merits, in Maryland. IOU's Maryland Complaint and its Motion for Summary Judgment squarely placed that issue before the Maryland Court.[32] Nevertheless, Downing attempts to crack the door on *res judicata* by suggesting that the defense of forgery is not precluded because that issue was not a compulsory counterclaim, it was not required to be raised in Maryland and that it may be raised in a later suit. [33] He then reveals his prior knowledge of the potential forgery defense before he settled the Maryland litigation and states *he "in fact elected" not to raise the fraud claim in Maryland*. [34]

This is nothing more than duplicitous gamesmanship to sidestep the application of *res judicata* and demonstrates that Plaintiff is really trying to affect a de facto appeal so he can have this Court overturn the Maryland judgment.

Furthermore, as well stated in *Colandrea* case, *supra*:

> To avoid the vagaries of *res judicata's* preclusive effect, [one] must assert all the legal theories he wishes to in [the] initial action, because failure to do so does not deprive the ensuing judgment of its effect as *res judicata*. Id. Citing Lockett, 914 F.Supp. at 1233.

---

[32] See Attachment No.s 2 and 3.
[33] See Downing's Responsive Memorandum, pg. 29.
[34] Id.

Since Downing "elected" not to challenge the Guaranty in Maryland the "*ensuing judgment and its effect as res judicata*" apply. Moveover, once he chose to settle the case by Consent Judgment and to waive all claims, known and unknown, the issue was precluded.

The second category of "*new claims*" Downing raises are claims not litigated in the Maryland case for obvious reasons such as the FDCPA, the GFBPA, the GUDTPA claims in Counts 1-3 and 5-6. However, these claims are derivative of the forgery claim from category one discussed above. Defendant does not contend these claims are precluded by *res judicata* to the extent they assert an independent basis of liability outside the Maryland judgment. However, as addressed *supra*, the fundament element crucial to those claims was the allegation of the fraudulent Guaranty. Since that issue was resolved, on the merits, in Maryland, these derivative claims lack an independent basis of liability and necessarily means each of these claims (Counts 1-3 and 5-6) also fail.

## IV.    Plaintiff's Fraud Claim Fails

### A. Plaintiff Has Not Plead Fraud with *Particularity* or *Plausibility*

Plaintiff's fraud claim (Count 4) fails as a matter of law on two grounds: (1) Plaintiff fails to plead his common law fraud claim with particularity and (2) Plaintiff's fraud claim, even if alleged with particularity, does not "*plausibly give*

*rise to an entitlement to relief*".  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To withstand a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013).

The Court is not required to "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1988 (Citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir/ 1987; C. Wright A. Miller, Federal Practice and Procedure § 1357, at 595-97 (1969).

The Court must consider the complaint in its entirety, as well as other sources courts ordinarily examine, when ruling on Rule 12(b)(6) motions. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S. Ct. at 1950.

### 1. *Plaintiff Has Not Plead Fraud with Particularity*

A claim for fraud has five elements under Georgia law: "(1) a false representation or omission of a material fact; (2) scienter, or knowledge of falsity;

(3) intention to induce the party claiming fraud to act or refrain from acting; (4) on which plaintiff justifiably relied; and (5) damages." Rampura v. Main & 75 Ctr., LLC, No. 1:06-CV-515- CAP, 2008 U.S. Dist. LEXIS 66999, at *25 (N.D. Ga. Feb. 13, 2008) (citing Mever v. Waite, 270 Ga. App. 255 (2004)). A plaintiff who alleges fraudulent concealment must prove these same five elements, including, as a factor of justifiable reliance, that he or she could not have discovered the alleged defect in the exercise of due diligence. Id, at *25-26; Worsham v. Provident Cos., Inc., 249 F. Supp. 2d 1325, 1331 (N.D. Ga.2002); see also O.C.G.A. §§ 23–2–52, 51–6–2(a).

In pleading a claim for fraud, the plaintiffs "must state with particularity the circumstances constituting fraud or mistake. Rule 9 thus requires plaintiff to allege (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud. *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011); *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1512 (11th Cir. 1988).

Here, Downing pleads only the mere conclusion of the elements of the fraud. He cursorily pleads IOU committed fraud, but never details how or when, (although

he explains in his brief it was as of the date of execution; (Downing's Brief pg. 13), by forging the signature (Downing's Brief pg. 13), but makes no mention of what person undertook this act or how it was done, and pleads knowledge by simply stating "Defendant knew" (FAC paras 64 and 73) and then contradicts this assertion by pleading that Defendant should have known (FAC, para 86) the guaranty was a forgery. More importantly Plaintiff fails to plead his justifiable reliance at all. The only allegation that Plaintiff justifiability relied is the mere conclusion that "Plaintiff justifiability relied on Defendant's representations". (FAC para 69). Nor does he plead any details of reliance to show that he could not have discovered the alleged defect in the exercise of due diligence. *Rampura v. Main & 75 Ctr., LLC*, No. 1:06-CV-515- CAP, 2008 U.S. Dist. LEXIS 66999, at *25 (N.D. Ga. Feb. 13, 2008) (citing *Mever v. Waite*, 270 Ga. App. 255 (2004)).

Each of these facts are conclusions not substantiated in fact. None of the allegations indicated the date, time, or place of any misrepresentation. Nor did the plaintiff identify who, how, or why any person employed by Defendant was responsible for the specific forged document. Indeed, in FAC para 4, its generically described as a "a scheme", in FAC para. 10 its merely "a fraud", in FAC para 18, its either "a mistake, error, fraud, and/or ineffective assistance of counsel".

## 2. *The Element of Reliance Does Not Exist*

Indeed, Downing cannot allege any such facts to support the element of reliance. Taking the Complaint in its entirety, as well as the Maryland public records, and Downing's own admissions and actions contrary to the element shows that Downing did not justifiably rely on the "fraud" he now alleges in the FAC. Any such claims of reliance are simply not *plausible*.

As discussed in more detail in Section I of this Reply, Downing, and his attorney, were aware of a forgery defense months prior to litigation commencing in Maryland and before he settled the case. Indeed, the records show he and his counsel knowingly executed the voluntarily Consent Judgment, the Settlement and Release Agreement, and the Voluntarily Dismissal with knowledge of the potential forgery defense. He pleads that the case in Maryland proceeded to judgment because of "mistake, error, fraud and/or ineffective assistance of counsel". (FAC para 18). Yet, even so, he admits he "elected" not to assert the fraud defense in Maryland prior to settling the case. Having known of his defense of forgery prior to settlement and then nevertheless agreeing to settle the case and release his claims, Downing is unable plead reliance on the fraud as a matter of law since he cannot show he was unable to discover the forgery in the exercise of due diligence. Rampura v. Main & 75 Ctr., LLC, No. 1:06-CV-515- CAP, 2008 U.S. Dist. LEXIS 66999, at *25 (N.D.

Ga. Feb. 13, 2008) (citing Mever v. Waite, 270 Ga. App. 255 (2004)). Even when the FAC alleges reliance (FAC Para.s 65. 66, 69 and 74), the allegation is a mere conclusion without any facts in support. Nor are there any facts to suggest Downing could have avoided the "fraud" nor could there be because we know from the FAC and the Maryland records that Downing "elected" sit on his "counterclaims" and opted to settle his case to resolve any issue as to the authenticity of the Guaranty.

Downing fails to articulate in the FAC the heightened pleading requirement necessary to indicate the "who, how, or when" he was defrauded into signing the Consent Judgment. Nor can he as no facts support such a contention. These allegations fall short of the heightened pleading for fraud. Therefore, Downing cannot show the element of justifiable reliance and his fraud claim must fail.

### 3. *The Merger Clause In the Settlement Agreement Precludes Reliance*

As shown above, the Settlement Agreement signed by Downing when dismissing his Maryland claim contained a merger clause.[35] When a contract contains a merger clause, "that clause operates as a disclaimer, establishing that the written contract completely and comprehensively represents all of the parties' agreement" and thus "bars [Plaintiff] from asserting reliance on the alleged misrepresentation not contained within the contract." *Worsham v. Provident*

---

[35] See Attachment No. 5 (Exh. 1, para. 6).

*Companies, Inc.*, 249 F.Supp.2d 1325 (N.D. Ga., 2002) (Citing *Pennington v. Braxley*, 224 Ga. App. 344, 480 S.E.2d 357, 359 (1997)).

Thus, as a matter of law, a valid merger clause executed by two or more parties precludes any subsequent claim of fraud based upon precontractual representations. *Id*. (citing *First Data POS, Inc. v. Willis*, 273 Ga. at 796, 546 S.E.2d 781. The "rational basis for [merger clauses] is that where parties enter into a final contract all prior negotiations, understandings, and agreements on the same subject are merged into the final contract, and are accordingly extinguished." Id. (quoting *Health Serv. Ctrs. v. Boddy*, 257 Ga. 378, 380, 359 S.E.2d 659 (1987); see *Alpha Kappa Psi Bldg. Corp. v. Kennedy,* 90 Ga.App. 587, 83 S.E.2d 580 (1954) (holding that there cannot be justifiable reliance upon a pre-contractual representation when there is a merger clause in a contract). Therefore, Plaintiff's fraud claim must fail.

## V. <u>Plaintiff's FDCPA, GFBPA, and GUDTPA Claims (Counts 1-3, 5-6) Fail</u>

Plaintiff predicated his federal and state claims on the contention that IOU "unlawfully attempted to collect the Judgment from him when it was known the guaranty was forgery". The forgery is the fundamental tenant of these claims. As shown above, having voluntarily consented to judgment to settle the Maryland case, Downing resolved any issue of liability or forgery and waived all jurisdictional

defenses.  Thus, the Consent Judgment against Downing is fatal to his fraud claim and consequently these claims as well.

## CONCLUSION

Plaintiff's failed to allege facts sufficient to support *plausible* claims. In addition, Plaintiff's claims reflect nothing more than an attempt to have the Court invalidate a final state court judgment contrary to the rationale of the *Rooker-Feldman doctrine* or *res judicata*. Accordingly, Defendant respectfully asks that Plaintiff's claims against it be dismissed in their entirety.


Respectfully submitted, May 21, 2019.

**JOYCE • CHILDERS LLP**

/s/ Jeff Joyce
JEFF R. JOYCE
Georgia Bar No. 005880
P.O. Box 550291
Atlanta, Georgia 30355
Tele: 404-760-6001
jjoyce@joycellp.com

*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LORENZO DOWNING, | |
| Plaintiff, | CIVIL ACTION FILE NO. |
| v. | 1:19-CV-0929 |
| IOU CENTRAL, INC d/b/a IOU FINANCIAL, LLC, a Georgia limited liability company, | |
| Defendant. | |

## CERTIFICATION PURSUANT TO LR 7.1D, NDGa.

` The undersigned counsel, pursuant to LR 7.1D, NDGa., hereby certifies that this filing has been prepared in a font and point selection approved in LR 5.1, NDGa., Times New Roman 14, and with margins as specified therein.

Dated: May 21, 2019.

**JOYCE • CHILDERS LLP**

/s/ Jeff Joyce
JEFF R. JOYCE
Georgia Bar No. 005880
P.O. Box 550291
Atlanta, Georgia 30355
Tele: 404-760-6001
jjoyce@joycellp.com

*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

LORENZO DOWNING,

    Plaintiff,

        v.

IOU CENTRAL, INC d/b/a IOU
FINANCIAL, LLC, a Georgia limited
liability company,

    Defendant.

CIVIL ACTION FILE NO.

1:19-CV-0929

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing REPLTY BRIEF OF DEFENDANT IOU CENTRAL, INC.'S IN SUPPORT OF ITS RENEWED MOTION TO DISMISS PLAINTIFF'S COMPLAINT was filed with the Clerk of this Court using the CM/ECF system for filing, which will give notice to the following parties of record:

Deborah Obiorah
OBIORAH FIELDS, LLC
157 South McDonough Street
Jonesboro, Georgia 30236

Damon L. Ward, Esq.
Ward Law Group
dward@wardlawgroup.com

Dated: May 21, 2019.

**JOYCE • CHILDERS LLP**

/s/ Jeff Joyce
JEFF R. JOYCE
Georgia Bar No. 005880