IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LORENZO DOWNING, *Individually*,

      Plaintiff,

v.

IOU CENTRAL, INC., *doing business as* IOU FINANCIAL, LLC, *a Georgia limited liability company*,

      Defendant.

CIVIL ACTION FILE NO.

1:19-cv-929-MLB-JKL

## FINAL REPORT AND RECOMMENDATION

This case is before the Court on Defendant IOU Central, Inc.'s motion to dismiss.  [Doc. 12.]  For the reasons that follow, it is **RECOMMENDED** that the motion be **GRANTED**.

## I.  BACKGROUND

On April 6, 2016, Spartan Business & Technology Services, Inc. ("Spartan") executed a Promissory Note (the "Note") for a commercial loan in the principal amount of $108,000 in favor of Defendant.  (Am. Compl. [Doc. 8] ¶ 11, Ex. 2 (Note).)   Plaintiff Lorenzo Downing, Spartan's president and chief operating

officer at the time, executed the Note. (*Id.* ¶¶ 12-13.[1])  Also on April 6, 2016, Plaintiff purportedly executed a Personal Guaranty Agreement partially guaranteeing the loan; however, Plaintiff denies that he executed the Guaranty and contends that his signature is a forgery. (*Id.* ¶¶ 14, 20, 33, Ex. 1 (Personal Guaranty Agreement).)

On March 16, 2017, Defendant sued Plaintiff and Spartan in the Circuit Court of Prince George's County, Maryland (the "Circuit Court"), alleging that Plaintiff and Spartan had defaulted on the loan obligation.  (Am. Compl. ¶ 17, Ex. 4 (Complaint in Circuit Court action).)  Plaintiff asserts that the Circuit Court lacked subject matter jurisdiction to hear the case because the Note contained an arbitration provision requiring that any dispute be resolved through binding arbitration in Kennesaw, Georgia. (*Id.* ¶¶ 18-19.)  In addition, Plaintiff alleges that he "discovered that [Defendant] had fraudulently affixed his signature to a Personal Guaranty," suggesting that it was not until the Circuit Court action had been filed that he learned of the Guaranty. (*Id.* ¶ 20.)  The parties ultimately settled the case, and Defendant voluntarily dismissed its suit on June 30, 2017. (*Id.* ¶ 26.)  As part

---

[1] The Amended Complaint refers to Plaintiff's position as both the Chief Operating Officer (*see* Am. Compl. ¶ 12), and the CEO (*id.* ¶ 13).

of those negotiations, however, Plaintiff insisted that neither he nor his wife would personally guarantee any settlement obligations.  (*Id.* ¶¶ 22-25, Ex. 3.)

On January 4, 2018, Spartan filed for bankruptcy in the Eastern District of Virginia.  (Am. Compl. ¶ 27.)  Eighteen days later, on January 22, 2018, Defendant moved to reopen the Prince George's County action and requested the court enter a "consent to judgment."[2]  (*Id.* ¶ 28.)   According to the amended complaint, Defendant did not "disclos[e]" either the existence of "the automatic stay rendered by the Bankruptcy Court" or that the Circuit Court lacked subject matter jurisdiction to hear the matter.  (*Id.*)

On March 19, 2018, the Circuit Court "unaware that it, like [Plaintiff], was being misled, granted [Defendant's] motion and entered judgment in favor of [Defendant] and against Spartan and [Plaintiff], individually and in his capacity as trustee of [Spartan], jointly and severally, despite the existence of a federal bankruptcy stay as well as the Arbitration Clause, Forum Selection Clause and Choice of Law provision in the underlying document upon which [Defendant's]

---

[2] Presumably Spartan and/or Plaintiff defaulted under the settlement agreement, and Defendant was therefore authorized to file a consent judgment. (*See* Am. Compl. Ex. 3 (emails between counsel negotiating terms of settlement).) [*See also* Doc. 23-5 at 4-7 (settlement agreement).]

motion was premised." (Am. Compl. ¶ 29.) Plaintiff then moved, *pro se*, to vacate the consent judgment and stay the case, and the Circuit Court held a hearing "while [Plaintiff] and an attorney he was in the process of retaining for the hearing were both unavailable and out of the country . . . ." (*Id.* ¶ 30.) According to Plaintiff, "the Circuit Court was aware of the scheduling conflict," but proceeded with the hearing anyway. (*Id.*) The Circuit Court denied Plaintiff's motions. (*Id.* ¶ 31.) Plaintiff contends that Defendant continued to be engaged in "collection activities" against him, despite the fact that the personal guaranty that Defendant presented to the Circuit Court is a forgery. (*Id.* ¶¶ 32-35.)

On February 26, 2019, Plaintiff filed this action [Doc. 1], and on April 4, 2019, he filed an amended complaint, which is the operative complaint in this action [*see* Doc. 8]. Plaintiff asserts six causes of action. In Counts I, II, and III, Plaintiff alleges that Defendant violated Sections 1692e, 1692f, and 1692i of the Fair Debt Collection Practices Act ("FDCPA"). (Am. Compl. ¶¶ 36-44 (Count I); *id.* ¶¶ 45-51 (Count II); *id.* ¶¶ 52-60 (Count III).) In Count IV, Plaintiff alleges that Defendant engaged in "intentional fraud" by, *inter alia*, forging Plaintiff's signature on the guarantee and using the guarantee to obtain a judgment against him. (*Id.* ¶¶ 61-78.) In Count V, Plaintiff alleges that Defendant violated the

Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), O.C.G.A. § 10-1-372.  (*Id.* ¶¶ 79-90.)  Finally, in Count VI, Plaintiff alleges that Defendant violated the Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-390, *et seq*. (*Id.* ¶¶ 91-98.)

On April 9, 2019, Defendant moved to dismiss the amended complaint. [Doc. 12.]  Defendant argues that FDCPA claims fail as a matter of law because the FDCPA applies only to consumer debt, but the underlying debt arose from a commercial transaction and is not consumer debt.  [Doc. 12-1 at 8-11.]  Defendant additionally argues that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine[3] because Plaintiff's claims in the case at bar challenge the validity of the Circuit Court judgment.  [*Id.* at 11-15.]  Next, Defendant argues that Plaintiff's claims are barred by res judicata, as they arise out of the same transactions and occurrences that were litigated in the Circuit Court.  [*Id.* at 15-18.] Defendant next argues that Plaintiff's fraud claim should be dismissed because Plaintiff has not pled fraud with specificity as Federal Rule of Civil Procedure 9(b)

---

[3] The *Rooker-Feldman* doctrine—named for two Supreme Court cases, *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)—prevents federal district courts from hearing what are essentially appeal from state court decisions.  *See Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1284 (11th Cir. 2018).

requires.  [*Id.* at 18-21.]  He further argues that the GUDTPA and GFBPA claims fail because they too have not been pled with requisite specificity, the GUDTPA claim is inapplicable to Plaintiff's claims, and he failed to provide *ante litem* notice as required by the GFBPA.  [*Id.* at 21-23.]  Lastly, Defendant argues that Plaintiff's "claims" for emotional distress, attorney fees, and punitive damages fail as a matter of law, as they are derivative of the substantive claims.  [*Id.* at 23-25.]

Plaintiff has filed a response.  [Doc. 22.]  Plaintiff contends that he has sufficiently alleged that the FDCPA claim involves a consumer debt because he "never executed any personal guaranty."  [*Id.* at 10.]  He additionally argues that he has sufficiently pled his fraud, GUDTPA and GFBPA claims.  [*Id.* at 11-19.]  He next argues that his claims are not barred by the *Rooker-Feldman* doctrine or res judicata.  [*Id.* at 20-32.]  Finally, Plaintiff contends that Defendant's arguments concerning his damages are premature.  [*Id.* at 32-35.]

On May 21, 2019, Defendant filed a reply in support of its motion.  [Doc. 23.]  The motion is now ripe for review.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

A complaint should be dismissed under Rule 12(b)(1) only where the court lacks subject matter jurisdiction over the subject matter of the dispute.  *See* Fed. R.

Civ. P. 12(b)(1).  Attacks on subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks."  *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1260 (11th Cir. 1997); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  Facial attacks "'require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Lawrence*, 919 F.2d at 1529 (alterations in original) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981).

　　"'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'"  *Lawrence*, 919 F.2d at 1529 (quotation omitted).  Under a factual attack, the presumption of truthfulness does not attach to the plaintiff's allegations.  *Id*.  Further, "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Id.* (quotation omitted).  The attack in this case is factual.

### B.    Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint need not provide "detailed factual allegations," but it must provide factual allegations sufficient to set forth the plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555.  Providing only "labels and conclusions" is insufficient, "and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Court is not required to accept as true legal conclusions couched as factual statements. *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not [shown]—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

8

## III.   ANALYSIS

### A.   The *Rooker-Feldman* doctrine bars Plaintiff's claims, except for Count III and Plaintiff's GFBPA claim (Count VI) to the extent the GFBPA claim is premised on a violation of 15 U.S.C. § 1692i.

Because the *Rooker-Feldman* doctrine raises a question about this Court's subject matter jurisdiction, the Court is "obliged to examine" it first. *See Target Media*, 881 F.3d at 1284. "The *Rooker-Feldman* doctrine places limits on the subject-matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001). Under the doctrine, "federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It also applies only to state court proceedings that have ended. *See Nicholson v. Shafe*, 558 F.3d 1266, 1275-79 (11th Cir. 2009).

Only claims that were raised in the state court and those "inextricably intertwined" with the state court judgment are subject to *Rooker-Feldman*.  *Casale*, 558 F.3d at 1260; *see also Target Media*, 881 F.3d at 1286 ("We . . . consider whether a claim was either (1) one actually adjudicated by a state court or (2) one 'inextricably intertwined' with a state court judgment.").  "A claim is inextricably intertwined if it would effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues."  *Casale*, 558 F.3d at 1260 (quotations and citations omitted).  But, even if a claim is inextricably intertwined with the state court's judgment, the doctrine does not apply if the plaintiff had no reasonable opportunity to raise his federal claim in the state proceedings.  *Id*.[4]  "Thus, the class of federal claims that [the Eleventh Circuit has]

---

[4] Plaintiff cites to a four-factor test from *Amos v. Glynn Cty. Bd. of Tax Assessors*, 347 F.3d 1249 (11th Cir. 2003), that the Eleventh Circuit has used as a guide for applying the *Rooker-Feldman* doctrine.  [Doc. 22 at 22.]  Under that test, the doctrine bars federal court jurisdiction where:

> (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment.

found to be 'inextricably intertwined' with state court judgments is limited to those raising a question that was or should have been properly before the state court." *Target Media*, 881 F.3d at 1286.

Here, Plaintiff argues that his claims in this case are "new and independent," and therefore the *Rooker-Feldman* doctrine is inapplicable.  [Doc. 22 at 25.]  In other words, Plaintiff maintains that his claims are not inextricably intertwined with the Circuit Court judgment.  The Court disagrees, except with respect to Plaintiff's FDCPA claim based on a violation of 15 U.S.C. § 1692i (Count III) and a corresponding state-law claim under the GFBPA.[5]

---

*Amos*, 347 F.3d at 1266 n.11.  The Eleventh Circuit has not applied the four-factor *Amos* test, however, following *Exxon Mobil*.  *See Target Media*, 881 F.3d at 1285 ("We have since declined to apply our previous test for *Rooker-Feldman* analysis and have instead hewn closely to the language of *Exxon Mobil*."); *Nicholson*, 558 F.3d at 1274 ("*Exxon Mobile* casts doubt on the continued viability of the *Amos* test.").  Accordingly, consistent with *Exxon Mobil* and subsequent Eleventh Circuit authority, the Court declines to apply the *Amos* test and instead applies the *Rooker-Feldman* doctrine "to bar only those claims asserted by parties who have lost in state court and then ask the district court, ultimately, the review and reject a state court's judgments."  *Target Media*, 881 F.3d at 1285-86 (citing *Nicholson*, 558 F.3d at 1268).

[5] The Court is compelled to point out that in Plaintiff's response brief, he only argues that his state law claims—*i.e.*, his claims for fraud and violations of the GUDTPA and GFBPA—are not barred by *Rooker-Feldman*.  [*See* Doc. 22 at 24 (stating that "In this case, Plaintiff has explicitly alleged claims for intentional fraud under Georgia law, the Georgia Uniform Deceptive Trade Practices Act and the

In Count I, Plaintiff alleges that Defendant violated 15 U.S.C. § 1692e, which provides, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute then goes on to list examples of conduct that violates the statute. *See* 15 U.S.C. § 1692e(1)-(16).

Here, Plaintiff alleges that Defendant "used false, deceptive, and misleading representations and means in connection with the collection of" the alleged debt as follows:

- Defendant allegedly "falsely represented the character, amount, and legal status of an alleged consumer debt to Lorenzo Downing" (1) "by asserting he owed a debt upon a forged Personal Guaranty"; (2) "by

_____

Georgia Fair Business Practices Act; claims separate and distinct from the formerly pro se Plaintiff's challenge to the jurisdiction of the previous state courts where Defendant, not Plaintiff, has been initiating legal actions." (emphasis omitted)); *see also id.* at 26 (arguing that his claims are not inextricably intertwined with the state court judgment "because a federal jury or court can determine whether Defendant ***violated Georgia law*** without reaching the merits of the state court collection action or whether [the Circuit Court] properly had subject matter jurisdiction." (emphasis added)).] Plaintiff offers no argument as to why his federal causes of action for violations of the FDCPA are not jurisdictionally barred. As such, the Court could well find that Plaintiff has no opposition to Plaintiff's argument that this Court lacks subject matter jurisdiction over those claims. Nonetheless, the Court proceeds to address the applicability of *Rooker-Feldman* to Plaintiff's FDCPA claims.

asserting he owed a debt not owed personally by Lorenzo Downing";
and (3) "by asserting he owed a debt that was owed by Spartan and
resolved in a bankruptcy proceeding."  (Am. Compl. ¶¶ 38-40.)

- Defendant allegedly "used false representations and deceptive means
in attempting to collect": (1) "a consumer debt not owed personally
by Lorenzo Downing" and (2) "a debt from Lorenzo Downing that
was owed by Spartan and resolved in a bankruptcy proceeding."  (Am.
Compl. ¶¶ 41-42.)

Plaintiff seems to have attempted to craft his amended complaint to allege that
misrepresentations were made to him (as opposed to the Circuit Court), presumably
in an effort to make it appear as though he is not challenging the Circuit Court's
judgment, but rather Defendant's collection activities.  But, as the Eleventh Circuit
has explained, "[a]lthough narrow in its application, a state court loser cannot avoid
*Rooker-Feldman*'s bar by cleverly cloaking her pleadings in the cloth of a different
claim.  Pretext is not tolerated."  *May v. Morgan Cty. Ga.*, 878 F.3d 1001, 1005
(11th Cir. 2017).  Despite Plaintiff's attempt to plead around *Rooker-Feldman*,
there is no legitimate doubt that what Plaintiff is really complaining about is an
injury caused by the consent judgment entered in the Circuit Court.  To prevail on

13

Count I, this Court (or a jury) would have to conclude that there is no debt either because the Guaranty was a forgery or it was discharged in bankruptcy. Such a finding would, essentially, nullify the Circuit Court's judgment. Since Count I is premised on Plaintiff's assertion that he does not owe the underlying debt, this claim falls squarely within the confines of *Rooker-Feldman*.

Count II is also barred by *Rooker-Feldman*. In that count, Plaintiff contends that Defendant violated 15 U.S.C. § 1692f, which provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Similar to Section 1692e, Section 1692f lists examples of conduct that violates the statute. 15 U.S.C. § 1692f(1)-(8). In the amended complaint, Plaintiff asserts that Defendant violated the statute because:

- Defendant "used unfair or unconscionable means to collect or attempt the collection of an alleged debt from Plaintiff" (Am. Compl. ¶ 46);

- Defendant "attempted and has been attempting to collect more than $75,000 from Lorenzo Downing where no such debt has been expressly authorized by Plaintiff or created by law" (Am. Compl. ¶ 47);

- Defendant "asserted a forged Personal Guaranty to defraud Plaintiff" (Am. Compl. ¶ 48);

- "Plaintiff never executed the Personal Guaranty asserted by Defendant" (Am. Compl. ¶ 49); and

- Defendant allegedly (1) "employed a device, scheme and artifice to defraud in preparing and asserting a forged personal guaranty"; (2) "made untrue statements of material facts" by stating that Plaintiff was personally responsible for Spartan's debt and "omitted material facts necessary to make [its] statements . . . not misleading," by stating that Plaintiff "signed the alleged personal guaranty for the debt of Spartan"; and (3) "engaged in acts, practices and courses of business which have operated as a fraud upon Plaintiff by suing Lorenzo Downing in his personal capacity for the debt of another."

These allegations put Count II in the heartland of *Rooker-Feldman*, as they necessarily call into question the validity of the Circuit Court judgment. Count II rests entirely on Plaintiff's contention that he does not owe the debt in question and that Defendant used a forged document to obtain a judgment against him. Indeed, Plaintiff explicitly asserts that "no such debt has been expressly authorized by

15

Plaintiff or ***created by law***"—clearly a broadside attack on the Circuit Court's judgment.  (*Id.* ¶ 47.)  Similar to Count I, for Plaintiff to succeed on Count II, a federal court would have to find that the Circuit Court's judgment was invalid. Thus, Count II is inextricably intertwined with the state court judgment.

Count III, which contains Plaintiff's Section 1692i claim, presents a more difficult question.  Section 1692i requires a debt collector who brings a legal action on a debt "against any consumer" to bring the action only in the judicial district in which such consumer signed the contract sued upon or in which the consumer resides at the commencement of the action.  15 U.S.C. § 1692i(a).  According to the amended complaint, Defendant violated that statute "by failing to bring its legal action against Lorenzo Downing in the judicial district or similar legal entity in which Mr. Downing allegedly signed the contract sued upon; or in which such Mr. Downing resided at the commencement of the action."  (Am. Compl. ¶ 54.) Plaintiff goes on to allege that he "never executed the documents asserted by Defendant IOU to collect the alleged debt," (*id.* ¶ 55), but that "[a]ssuming arguendo the Personal Guaranty had any legal legitimacy, its terms called for the matter to be arbitrated in Georgia" (*id.* ¶ 56).  Defendant did not, however, initiate an arbitration in Georgia, but instead filed suit in Maryland state court, where

16

Plaintiff did not reside at the commencement of the action.  (*Id.* ¶¶ 57-59.)  Plaintiff also maintains that the Circuit Court in Maryland lacked subject matter jurisdiction to hear the case because of the arbitration clause.  (*Id.* ¶¶ 18-19.)

Based on the information before the Court at this time, Plaintiff's Section 1692i claim in Count III does not appear to be barred by *Rooker-Feldman*.  He alleges that, even if there was an enforceable contract between him and Defendant, Defendant brought the action to enforce the contract in an improper venue for purposes of Section 1692i.  Conceivably, the Court or a jury could find that the Circuit Court was an improper venue for purposes of Section 1692i without invalidating the Circuit Court's judgment.  To find for Plaintiff, the factfinder would need to determine, *inter alia*, that the contract was not signed in Prince George's County and that Plaintiff did not live in Prince George's County at the commencement of the Circuit Court case.  Although Plaintiff continues to insist in Count III that he did not sign the Personal Guaranty Agreement, he has pleaded Count III as an alternative claim in the event that there is a valid contract between him and Defendant.  (Am. Compl. ¶ 56.)  Moreover, the Court cannot say at this time that the factfinder would have to find that the contract was a forgery in order to find that it was not signed in Prince George's County.  Defendant's position is

17

that Plaintiff signed the Personal Guaranty Agreement, but it has not indicated where that agreement was signed.  Thus, based on the information before the Court, the "essential inquiry" of this claim is not necessarily the same as the inquiry before the Circuit Court—*i.e.*, the enforceability of the Personal Guaranty Agreement— and the *Rooker-Feldman* doctrine does not bar the claim.  *See Target Media*, 881 F.3d at 1286.

But Count III is adorned with additional factual allegations (including his incorporation by reference, in paragraph 52, of all previous allegations and Counts I and II) that bring the *Rooker-Feldman* doctrine into question.  Plaintiff appears to proceed on an additional theory in Count III that the Circuit Court lacked subject matter jurisdiction to hear the case because the parties had agreed to arbitrate any disputes in Georgia.  (*See* Am. Compl. ¶¶ 18-19,56-57.)  Indeed, in his response to the motion to dismiss, Plaintiff describes the Circuit Court's judgment as a "Consent Judgment improperly entered in a state court without subject matter jurisdiction." [Doc. 22 at 30.]  A challenge to the subject matter jurisdiction of the Circuit Court is also a challenge to the validity of the underlying judgment.  *See Doe v. Mann*, 415 F.3d 1038, 1042 n.6 (9th Cir. 2005) ("*Rooker-Feldman* applies where the plaintiff in federal court claims that the state court did not have

jurisdiction to render a judgment."); *see also Casale*, 558 F.3d at 1261 (11th Cir. 2009) (noting that some circuits have adopted an exception to *Rooker-Feldman* where the state court lacked jurisdiction, but that the Eleventh Circuit "has never adopted that exception").

Because of the manner in which Plaintiff pleaded Count III, it appears that part of the claim is barred by *Rooker-Feldman* and part of the claim is not. Even so, as discussed in the next section, Count III fails in its entirety as a matter of law because the FDCPA does not apply, as the underlying debt is commercial, not personal, in nature.

Turning to Plaintiff's state law claims, this Court is also jurisdictionally barred from hearing Plaintiff's claims of fraud and violations of the GUDTPA as those claims also challenge the validity of the Circuit Court judgment. Both of those claims are predicated on Plaintiff's assertion that Defendant used a forged Guaranty to commit a fraud on the court, and thus, would require this court to adjudge the Circuit Court's judgment invalid. As for Plaintiff's GFBPA claim, this Court is jurisdictionally barred from hearing that claim to the extent that it challenges the validity of the Circuit Court judgment. But, Plaintiff also alleges that "a violation of the Fair Debt Collection [Practices] Act automatically

constitutes a violation of the Georgia Fair Business Practices Act." (Am. Compl. ¶ 97.) As discussed above, Plaintiff's 15 U.S.C. § 1692i claim does not necessarily call into question the validity of the Circuit Court judgment, and, thus, Count III is not barred by *Rooker-Feldman*. It follows, therefore, that the doctrine does not bar Plaintiff's GFBPA claim based on the same conduct. Accordingly, this Court lacks subject matter jurisdiction over the state law claims, except for Plaintiff's GFBPA claim to the extent that it is does not challenge the validity of the Circuit Court judgment.[6]

Citing *Christophe v. Morris*, 198 F. App'x 818 (11th Cir. 2006), Plaintiff argues by assertion that his claims are distinct from the Circuit Court judgment. *Christophe*, however, actually supports this Court's analysis, as the decision illustrates the distinction between a state-court loser's challenge to the validity of an underlying state court judgment (which *Rooker-Feldman* forbids) versus a challenge to the manner in which the judgment is "executed or carried out" after judgment has been entered. 198 F. App'x at 826. In *Christophe*, a tenant who lost

---

[6] The Eleventh Circuit has repeatedly applied the *Rooker-Feldman* to state law claims. *See, e.g.*, *Jackson v. Farmers Ins. Grp./Fire Ins. Exch.*, 391 F. App'x 854, 857 (11th Cir. 2010); *Stack v. Mason & Assocs.*, 245 Fed. App'x 920 (11th Cir. 2007).

a dispossessory proceeding in state court sued her landlords, law enforcement officers, a moving company, and others in federal court challenging both the state-court dispossessory judgment and the defendants' alleged participation in her later eviction. The Eleventh Circuit held that *Rooker-Feldman* barred a majority of her claims because, as part of her relief, she sought to void the state court judgment against her. *Id*. at 825. But, with respect to actions to remove her from the property that occurred after the eviction ruling, the court held that those claims fell outside *Rooker-Feldman*. The court reasoned that a claim based on the manner in which the defendants allegedly carried out the judgment was a "separate and distinct issue" and that the "state court proceedings centered on whether or not she would be evicted, and she could not reasonably have been expected at that time to raise any issues about the manner in which the Sheriff's office would conduct the eviction and execute the judgment against her." *Id.* at 826.

Even liberally construing the amended complaint, Counts I and II and Plaintiff's state law claims all hinge on the manner in which Plaintiff obtained the judgment in an effort to invalidate the judgment against him. In contrast to *Christophe*, Plaintiff does not challenge debt collection activities that Defendant allegedly engaged in following entry of the judgment. As discussed above, those

claims, at bottom, mainly challenge the validity of the consent judgment, not just Defendant's collection practices.  Plaintiff's reliance on *Christophe*, therefore, is unavailing.

Plaintiff's contention that he was deprived of the opportunity to be heard at a post-judgment hearing on his motion to vacate the judgment and stay proceedings also falls flat.  It is utterly implausible that Plaintiff was denied the opportunity to raise substantive or procedural defenses in the action, including the FDCPA claims he now attempts to assert.  More than a year passed between the filing of the lawsuit and the entry of the consent judgment, and Plaintiff presents no evidence (nor does he allege any facts) suggesting that he was unable to raise those issues during that time period.  Similarly, nearly two months passed between Defendant's filing of the motion for entry of the consent judgment and the Court's order granting the motion.  Again, Plaintiff has not shown that he was denied the opportunity to oppose that request during that two-month period.  It further appears that after the judgment was entered, Plaintiff challenged the judgment.  The fact he did not

appear for a hearing or had not retained counsel is not the same as being denied the opportunity to raise issues.[7]

Finally, the Court addresses the finality of the state court decision. Plaintiff alleges that the Circuit Court entered the consent judgment on March 19, 2018, and that the court thereafter denied Plaintiff's post-judgment effort to vacate or stay the judgment. (Am. Compl. ¶¶ 29-31.) The docket for the Circuit Court action likewise reflects that the consent judgment was entered on March 19, 2018.[8] [*See* Doc. 23-1 at 5.] The docket further reflects that on September 14, 2018, the Circuit

---

[7] Plaintiff's assertion that he had no opportunity to raise the claims in the case at bar in the Circuit Court also rings hollow because the FDCPA, fraud, GFBPA, and GUDTPA claims are all facially defective, as will be discussed in the next section. In *Jallali v. American Osteopathic Association*, 461 Fed. Appx. 838, 839-40 (11th Cir. 2012), the court rejected the plaintiff's argument that his claims were not barred by *Rooker-Feldman*, explaining that "[e]xcept for [the plaintiff's] facially defective claims for equitable and judicial estoppel, [he] had a reasonable opportunity to raise his federal claims in the state court proceeding." A district court in Alabama similar found that claims that were "facially defective, as well as inextricably intertwined . . . remain[ed] within the reach of the *Rooker-Feldman* bar even if plaintiff did not have a reasonable opportunity to raise [them] in the state court proceeding." *Springer v. State Farm Mut. Ins. Co.*, No. 3:13CV241-MHT, 2013 WL 4851617, at *3 n.6 (M.D. Ala. Sept. 10, 2013) (applying *Jallali* to hold that *Rooker-Feldman* barred consideration of inextricably intertwined claims that were facially defective).

[8] The Court may properly take judicial notice of the state court docket entries. *See McDowell Bey v. Vega*, 588 F. App'x 923, 926 (11th Cir. 2014) (collecting cases). A copy of the docket is attached as Exhibit 1 to Defendant's reply. [*See* Doc. 23-1.] It is also available online.

23

Court denied a variety of post-judgment motions that Plaintiff filed and closed the case, and that on December 17, 2018, the Maryland Court of Special Appeals, the intermediate appellate court in Maryland, dismissed Plaintiff's appeal. [*Id.* at 9-10.] There is no indication that Plaintiff has sought additional appellate relief from the Maryland Court of Appeals. It therefore appears that the state proceedings have ended.

In sum, Plaintiff's claims, with the exception of Count III and Count VI, are predicated entirely on injuries that were allegedly caused by the Circuit Court's entry of a judgment holding him liable for Spartan's debt. Plaintiff cannot succeed on those claims without this Court deciding that the Circuit Court's judgment was error or otherwise invalid. Accordingly, those claims are inextricably intertwined with the Circuit Court's judgment, and under the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction over the claims. *See Franklin v. Arbor Station, LLC*, 549 F. App'x 831, 833 (11th Cir. 2013) (holding that FDCPA claims based on landlord and its attorney's alleged misrepresentations during state court detainer action were barred by *Rooker-Feldman* because the claims necessarily required nullification of a state court judgment). It is therefore **RECOMMENDED** that Plaintiff's claims be **DISMISSED** for lack of subject

24

matter jurisdiction, with the exception of his § 1692i claim in Count III and Count

VI, to the extent that Count VI is based on a violation of § 1692i.

> **B.    To the extent that Plaintiff's claims are not inextricably intertwined with the Circuit Court Judgment, the Court should dismiss them with prejudice.**

To the extent that Plaintiff's claims are separate and distinct from the Circuit

Court judgment, and therefore outside the scope of the *Rooker-Feldman* doctrine,

dismissal of this action is appropriate because Plaintiff has not pled plausible

FDCPA or state law claims.[9]

> **1.    The FDCPA claims fail as a matter of law because the underlying debt is a business debt, not a consumer debt.**

To succeed on an FDCPA claim, "a plaintiff must make a threshold showing

that the money being collected qualifies as a 'debt.'" *Oppenheim v. I.C. Sys., Inc.*,

627 F.3d 833, 836-37 (11th Cir. 2010).  The FDCPA defines "debt" as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

---

[9] The Court also notes that Plaintiff's claims appear to fall within the general release of the parties' Settlement Agreement and Mutual Release.  [Doc. 23-5 at 1-2.]

25

15 U.S.C. § 1692a(5).  To state a claim that Defendant violated the FDCPA, Plaintiff must allege facts that plausibly suggest that the obligation (or alleged obligation) to pay "originated from a transaction in which the money or services that were the subject of the transaction were primarily for personal, family, or household purposes."  *Surber v. McCarthy, Burgess & Wolff, Inc.*, 634 F. App'x 292, 294-95 (11th Cir. 2015) (citing 15 U.S.C. § 1692(a)(5)).

Here, not only has Plaintiff failed to make such a showing, the amended complaint confirms that that the underlying debt in this case arose out of a commercial transaction and, therefore, the FDCPA is wholly inapplicable. Specifically, Plaintiff alleges that Spartan obtained the underlying "commercial loan" and that Plaintiff executed the Note when he was serving as a corporate officer of Spartan.  (Am. Compl. ¶¶ 11, 13.)  Likewise, the Note itself states that Spartan "represents and warrants to [Defendant] that the proceeds of this Loan will be used for business and commercial purposes and not for any agricultural, ***personal, family or household purpose***."  (*Id.* Ex. 2 at 1 (emphasis added).[10])  The

_____

[10] In general, a district court may consider exhibits attached to a complaint in ruling on a motion to dismiss.  *See* Fed. R. Civ. P. 10(c); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997) ("[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and

guaranty at issue secured that loan.  (*Id.* Ex. 1.)  The Guaranty states:  "This Guaranty governs the terms and conditions of [Plaintiff's] guaranty of the Commercial Loan obtained by [Spartan]."  (*Id.* Ex. 1 at 1.)  Unquestionably, the underlying debt is a commercial debt to which the FDCPA has no application.[11]

Plaintiff argues that he has sufficiently alleged that the debt is not a commercial debt because he has alleged that he "never executed any personal guaranty" and that "Defendant forged his signature."  [Doc. 22 at 10.]  Plaintiff also argues that the debt is not commercial because "Defendant seeks to collect . . . the personal funds of Plaintiff from his personal bank accounts, personal property, and personal wages."  [*Id.* at 11.]  According to Plaintiff, this case presents an issue

---

attachments thereto.").  The Court may also consider evidence outside of the pleadings without converting the motion to one for summary judgment if the document is central to the complaint and its authenticity is not challenged.  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

[11] The Court pauses to note that Plaintiff is somewhat imprecise in characterizing the nature of debt.  It appears that he chiefly argues that he has no liability for the underlying loan to Spartan on the grounds that he did not sign the Guaranty.  (*See* Am. Compl. ¶¶ 33-34.)  But Plaintiff's present obligation to pay Defendant appears to be based on the settlement agreement and consent judgment, not the guaranty.  [*See* Doc. 23-5 (Defendant's motion to reopen the Circuit Court action and enter the consent to judgment).]  To the extent that Plaintiff contends that his obligation under the consent judgment qualifies as a "debt" under the FDCPA, the Court rejects that argument, as Plaintiff has not alleged any facts that plausibly suggest that the underlying transaction leading to the entry of the judgment was for a personal, family or household purpose.

of first impression—*i.e.*, whether "where there is no underlying transaction that exists[,] the debt must be construed as a consumer debt since Plaintiff's personal funds are inherently for personal/consumer purposes until impacted upon through third-party obligation." [*Id.*]

      Plaintiff's arguments are without merit. It makes no difference whether or not Plaintiff signed the Guaranty because the FDCPA defines "debt" to include "any obligation or ***alleged*** obligation." 15 U.S.C. § 1692a(5) (emphasis added); *see also Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 102 (2d Cir. 2016) (concluding that claim arose out of commercial transaction and was not covered by FDCPA, regardless of whether the alleged debt was "actually owed or mistakenly assessed"); *Chavez v. Access Capital Servs., Inc.*, No. 1:13-CV-01037 AWI-GSA, 2014 WL 2716876, at *2 (E.D. Cal. June 16, 2014) ("Plaintiff's conclusory allegation that the Defendant attempted to collect a nonexistent debt does not clarify whether this alleged debt was characterized as consumer debt or, instead, was alleged to be corporate or commercial debt . . . or another type of obligation that is outside the purview of the FDCPA."). Thus, whether the FDCPA applies does not depend on the existence of an obligation to pay money.

Plaintiff's argument that his personal money and property is at risk also misses the mark.  Whether a debt falls under the FDCPA does not depend on the source of a debtor's funds, but rather the nature of the transaction.  Here, Plaintiff presents no plausible basis to believe that the "alleged obligation" arose out of a "transaction" where "the subject of the transaction" is "primarily for personal, family, or household purposes," since the transaction that gave rise to Plaintiff's obligation to pay was a personal guarantee for a commercial loan.  *First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 136 (5th Cir. 1995) (holding personal guarantee of business partnership's loan was not personal in nature because guaranty was executed in connection with a commercial transaction); *Pelletier v. Estes Groves, Inc.*, No. 16-14499-CIV, 2018 WL 4208328, at *10 (S.D. Fla. Mar. 28, 2018) (personal guarantee of business loan related to a business transaction and, therefore, did not constitute a debt under the FDCPA).  Though Plaintiff repeatedly characterizes the alleged debt in this case a "consumer debt" in the amended complaint, he alleges no facts to support those assertions, and, to the contrary, the commercial nature of the underlying transaction rebuts his conclusory allegations the alleged debt is subject to the FDCPA.

For these reasons, it is **RECOMMENDED** that Plaintiff's § 1692i claim in Count III be **DISMISSED** for failure to state a claim.   Furthermore, even if Plaintiff's other FDCPA claims could be interpreted as asserting a claim separate and distinct from the Circuit Court's judgment, those claims should be dismissed.

### 2. The state law claims fail as a matter of law.

#### a. Plaintiff has failed to plead fraud with requisite specificity.

In order to prove fraud, a plaintiff must establish five elements: "(1) a false representation by a defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff, and (5) damage to plaintiff." *Bush v. AgSouth Farm Credit, ACA*, 346 Ga. App. 620, 629 (2018), *cert. denied* (Mar. 4, 2019).   Federal Rule of Civil Procedure 9(b) provides for a heightened pleading standard for fraud claims.   Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").   The purpose of the heightened pleading requirement is to "alert[] defendants to the precise misconduct with which they are charged and [to] protect[] defendants against spurious charges of immoral and fraudulent behavior." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) (alterations in original) (quotation omitted).   "Rule 9(b) is satisfied if the complaint

30

sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quotation omitted).

With these principles in mind, the Court first addresses the scope of Plaintiff's fraud claim. Plaintiff appears to base his fraud claim on "specific misrepresentations to Plaintiff, the public at large, and to a court of law," that Defendant purportedly made. (Am. Compl. ¶ 62.) "The general rule in Georgia is 'that actionable fraud must be based upon a misrepresentation made *to* the defrauded party, and relied upon *by* the defrauded party.'" *Shuford v. Aames Plumbing & Heating, Inc.*, 327 Ga. App. 844, 849 (2014) (quoting *Fla. Rock & Tank Lines, Inc. v. Moore*, 258 Ga. 106, 106 (1988)). "This precept is extended to circumstances of indirect fraud, where the misrepresentation is made to a third-party, knowing the third-party will repeat the falsehood to the plaintiff and the plaintiff will rely on the third-party." *Lee v. Caterpillar Inc.*, No. 1:11-CV-2130-

31

WSD, 2011 WL 13176333, at *4 (N.D. Ga. Dec. 2, 2011), *aff'd*, 496 F. App'x 914 (11th Cir. 2012). "As the Georgia Supreme Court has explained, fraud exists 'where . . . A, having as his objective to defraud C, and knowing that C will rely upon B, fraudulently induces B to act in some manner on which C relies, and whereby A's purpose of defrauding C is accomplished.'" *Id.* (quoting *Fla. Rock & Tank Lines*, 258 Ga. at 107). Here, Plaintiff alleges no facts to suggest that he justifiably relied to his detriment on misstatements that Defendant allegedly made to members to the general public or to the Circuit Court. Accordingly, Plaintiff cannot predicate his fraud claim on alleged misstatements made to others.

What remains, therefore, is Plaintiff's assertion that Defendant made misrepresentations to him. The problem for Plaintiff is that his amended complaint falls far short of pleading fraud with sufficient particularity. Plaintiff does not identify the time and place of each alleged misrepresentation, who made the purported misrepresentations, or what actions he took, or retrained from taking, on the basis of those misrepresentations. The absence of this detail is particularly damning because Plaintiff's theory appears to be that Defendant misrepresented to him that he signed a personal guaranty, and it beggars credulity that Plaintiff could

32

have reasonably relied on such a misrepresentation, especially given his steadfast assertion that his signature is a forgery.

For these reasons, even if the *Rooker-Feldman* doctrine did not bar Plaintiff's fraud claim, it should be dismissed.

> **b.** **Plaintiff has not pled a plausible claim for relief under the Georgia Uniform Deceptive Trade Practices Act.**

Plaintiff has also failed to state a plausible claim under the GUDTPA. The GUDTPA, codified at O.C.G.A. § 10-1-372, is the state analogue to the federal Lanham Act. *Alleyne v. Bank of Am.*, No. 1:11-CV-04593-WBH-GGB, 2012 WL 13014018, at *5 (N.D. Ga. June 4, 2012), *report and recommendation adopted*, 2012 WL 13014119 (N.D. Ga. July 27, 2012); *Pacific Western, Inc. v. LandAmerica Credit Servs., Inc.*, No. 1:05-CV-0895-JEC, 2007 WL 1970870, at *4 (N.D. Ga. June 29, 2007) (citing *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997) ("It should be apparent that § 43(a) of the Lanham Act and § 10-1-372(a)(2) of the UDTPA provide analogous causes of action governed by the same standard.")). The act provides a cause of action when a person, "in the course of his business, vocation, or occupation he" does any of the following:

(1) Passes off goods or services as those of another;

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

(4) Uses deceptive representations or designations of geographic origin in connection with goods or services;

(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

(6) Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;

(8) Disparages the goods, services, or business of another by false or misleading representation of fact;

(9) Advertises goods or services with intent not to sell them as advertised;

(10) Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; or

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

34

O.C.G.A. § 10-1-372(a).  The act primarily deals with trade practices that are likely to cause confusion in the marketplace, such as passing off goods or creating a false impression as to the source, sponsorship, or approval of goods.  *Alleyne*, 2012 WL 13014018, at *5.

Plaintiff does not explain how any of Defendant's alleged actions in this case fit among those enumerated practices, nor does he provide authority suggesting that a creditor's collection efforts qualify as a deceptive trade practice under that statute. Indeed, other courts have declined to extend the GUDTPA to debt collection efforts.  *See Hines v. MidFirst Bank*, No. 1:12-CV-2527-TWT-JSA, 2013 WL 609401, at *6 (N.D. Ga. Jan. 8, 2013) (concluding under analogous circumstances that the GUDTPA does not cover "a debtor's rights and obligations under a mortgage and security deed"), *report and recommendation adopted*, 2013 WL 603883 (N.D. Ga. Feb. 19, 2013); *see also McIntyre v. JPMorgan Chase Bank, NA*, No. 1:14-CV-1749-HLM, 2014 WL 12180220, at *11 n.3 (N.D. Ga. Aug. 7, 2014). Accordingly, even if the *Rooker-Feldman* doctrine did not bar Plaintiff's GUDTPA claim, that claim should be dismissed.

        **c.**      **Plaintiff's Georgia Fair Business Protection Act claim fails because he failed to allege facts suggesting that he gave *ante litem* notice.**

Plaintiff's GFBPA claim fails because Plaintiff has not pled facts that plausibly suggest that he provided *ante litem* notice to Defendant, as required under O.C.G.A. § 10-1-399(b).  As a prerequisite for filing suit alleging violations of the GFBPA, the plaintiff must deliver a written demand for relief to the defendant at least 30 days prior to filing that identifies the plaintiff and reasonably describes the unfair or deceptive act or practice relied upon and the injury suffered.  O.C.G.A. § 10-1-399(b); *Steed v. Fed. Nat'l Mortg. Corp.*, 301 Ga. App. 801, 809-10 (2009); *Lynas v. Williams*, 216 Ga. App. 434, 435 (1995).  The failure to provide such notice is fatal to a GFBPA claim.  *See Walker v. JPMorgan Chase Bank, N.A.*, 987 F. Supp. 2d 1348, 1354 (N.D. Ga. 2013) (determining that GFBPA claim failed as a matter of law where plaintiff did not provide *ante litem* notice).  *Ante litem* notice is not required, however, where the "prospective respondent does not maintain a place of business or does not keep assets within the state."  O.C.G.A. § 10-1-399(b).

In Plaintiff's amended complaint he alleges that Defendant maintains its principal place of business in Kennesaw, Georgia.  (Am. Compl. ¶ 3.)  Thus, Plaintiff was required to provide *ante litem* notice before he could maintain a

GFBPA claim against Defendant.  Since Plaintiff has not alleged that he provided

such notice to Defendant, Plaintiff's GFPBA claim fails as a matter of law.

Plaintiffs arguments to the contrary are unavailing.  Plaintiff argues that "a

question of fact" exists as to whether *ante litem* notice was required because

Defendant contends in its motion to dismiss that it is misidentified in the caption

of the case as a limited liability company.  [Doc. 22 at 19.]  This argument is a *non-

sequitur*.  Regardless of whether Defendant is an incorporated entity or a limited

liability company, there is nothing in the record that plausibly contradicts

Plaintiff's allegation that the Defendant maintains a place of business in Georgia.

Plaintiff also argues that Defendant had notice more than 30 days prior to the

filing of this action from the Circuit Court proceedings that Plaintiff "claimed fraud

on the part of Defendant."  [Doc. 22 at 19.]  Plaintiff cites no authority, however,

to suggest that Defendant's involvement in the Circuit Court action relieved him of

his obligation to provide *ante litem* notice.[12]

_____

[12] In addition, since Plaintiff's FDCPA claims are without merit, the GFBPA claim also fails on its merits to the extent it is based on a violation of the FDCPA. (*See* Am. Compl. ¶ 97.)

37

For these reasons, it is **RECOMMENDED** that Plaintiff's GFBPA claim, to the extent that that claim is based on a violation of § 1692i, be **DISMISSED**, as Plaintiff has failed to state a claim upon which relief can be granted.[13]

## IV.   CONCLUSION

For the foregoing reasons it is **RECOMMENDED** that Defendant's motion to dismiss [Doc. 12] be **GRANTED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned.

IT IS SO RECOMMENDED this 29th day of May, 2019.

_____
JOHN K. LARKINS III
United States Magistrate Judge

---

[13] Because the Court has found that none of Plaintiff's claims has merit, the Court need not, and does not, consider Defendant's other arguments for dismissal. Also, as to Defendant's contention that Plaintiff's "claims" for emotional damages, punitive damages or attorney fees should be dismissed, the Court does not read Plaintiff's Amended Complaint to assert independent causes of action based on each of those theories, but rather they are demands for relief derivative of the substantive claims in this case.

38